# STATE OF MICHIGAN

# COURT OF APPEALS

---

DOROTHY SLEIGHT,

        Plaintiff-Appellee,

v

DAVID LEE SLEIGHT,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 319806
Clare Circuit Court
LC No. 13-900473-PP

---

Before: OWENS, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent appeals as of right the circuit court's order denying his motion to terminate an ex-parte personal protection order (PPO). By its terms, the PPO terminated on October 2, 2014. Accordingly, this appeal is moot. In any event, respondent's assertions of error are without merit.

A PPO constitutes injunctive relief. MCL 600.2950(30)(c). "The granting [or denying] of injunctive relief is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Pickering v Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011).

MCL 600.2950(4) provides:

> The court shall issue a personal protection order under this section if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1). In determining whether reasonable cause exists, the court shall consider all of the following:

(a) Testimony, documents, or other evidence offered in support of the request for a personal protection order.

(b) Whether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1).

MCL 600.2950(1) includes the following prohibited forms of contact:

(a) Entering onto premises

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

(d) Removing minor children from the individual having legal custody of the children, except as otherwise authorized by a custody or parenting time order issued by a court of competent jurisdiction.

(e) Purchasing or possessing a firearm.

(f) Interfering with petitioner's efforts to remove petitioner's children or personal property from premises that are solely owned or leased by the individual to be restrained or enjoined.

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

(h) Having access to information in records concerning a minor child of both petitioner and respondent that will inform respondent about the address or telephone number of petitioner and petitioner's minor child or about petitioner's employment address.

(*i*) Engaging in conduct that is prohibited under [the stalking and aggravated stalking statutes].

(j) Any other specific act or conduct that imposes or interferes with personal liberty or that causes a reasonable apprehension of violence.

MCL 750.411h(1)(d) defines stalking as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." " 'Course of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a).

"Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose. [MCL 750.411h(1)(d).]

The trial court found that there was reasonable cause to believe that respondent "may do some of the acts that can be enjoined," based on evidence regarding respondent's behavior on October 13 and 14, 2013, which included repeated phone calls and text messages sent to petitioner, and threats, as well as his attempt to lock her out of the home. Respondent contends that the court erred by concluding that he stalked petitioner. This is a misunderstanding of the court's conclusion. What the court determined is that respondent may engage in stalking in the future.

The evidence establishes that without the PPO, respondent may engage in stalking. Indeed, the evidence already showed a "course of conduct" directed toward the petitioner "that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(d). The evidence showed that on October 13 respondent threw his phone during an argument with petitioner. He was allegedly in such an agitated state that, according to petitioner, "he wasn't making any sense." Then on October 14, petitioner testified that while she was out of the home, respondent disconnected the garage door, wired the front door shut, and threatened to change the locks on the marital home and throw petitioner's belongings away. Petitioner also asserted that between October 15 and October 24 (the day the PPO issued), defendant "constantly" tried to contact her. And her assertion that "[h]is anger and control is escalating," along with his prior behavior, supports a finding that a reasonable person in petitioner's place would feel frightened and intimidated. Respondent offered testimony to rebut many of these accusations, but it was for the trial court to weigh the witnesses' credibility. Petitioner's testimony and assertions show an increasing tendency toward unreasonable and unpredictable behavior by respondent.

Defendant asserts, without legal support, that because the events occurred during a 24-hour period, they do not constitute a "course of conduct." "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Moreover, the statutory definition does not include a time element, other than to say that the acts must be "separate" and "noncontinuous." MCL 750.411h(1)(a). The acts in issue satisfy both qualifications. Additionally, respondent's argument ignores his continuous attempts to contact petitioner between October 15 and the day the PPO was entered.

Therefore, even if the issue were not moot, we would conclude that the trial court had reasonable cause to believe that respondent was likely to commit one or more of the acts listed in MCL 600.2950(1), including subsections (1)(*i*) and (1)(j).[1] MCL 600.2960(4).

The appeal is dismissed as moot.

/s/ Donald S. Owens
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[1] Respondent also characterizes the events of October 13 and 14, 2013, as "at worst, commonplace and normal . . . for couples who were experiencing marital difficulties." This attempt to minimize the impact of his actions is unconvincing. The violence evidenced by the throwing of the cell phone and the physical restraints blocking petitioner's entry into her own home cannot be characterized as "commonplace." The court's decision was not an abuse of discretion.