*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMA,

                Petitioner-Appellee,

v

MWA,

                Respondent-Appellant.

UNPUBLISHED
April 28, 2022

No. 357438
Ingham Circuit Court
Family Division
LC No. 20-001373-PP

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order denying his motion to terminate a January 2021 ex parte personal protection order (PPO) entered in favor of petitioner. We reverse and remand for entry of an order granting respondent's motion.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a series of PPO proceedings beginning in July 2020 between petitioner and her husband, respondent.[1]

### A. INITIAL EX PARTE PPO AND MOTION TO TERMINATE

Petitioner filed a petition for an ex parte PPO on July 13, 2020. In her petition, petitioner alleged that on July 12, 2020, she had a physical altercation with respondent where he attempted to prevent her from contacting anyone with her phone and took her to another room by her wrists. Petitioner stated that the police were called, and they sent a report of domestic assault to the prosecutor. Petitioner also alleged that respondent used intimidation and fear to get his way during their marriage, and once threatened to kill her if she called the police on him.

---

[1] Shortly after these proceedings began, the parties filed for divorce. Divorce litigation occurred throughout the PPO proceedings and became relevant to this appeal.

-1-

The trial court issued an ex parte PPO for petitioner against respondent, ordering respondent not to enter onto property where petitioner lives; assault, attack, beat, molest, or wound petitioner; stalk petitioner; and threaten to kill or physically injure petitioner. Respondent subsequently filed a motion to terminate this PPO, denying petitioner's allegations and asserting that her petition was premised on a lie regarding the facts of the July 12, 2020 altercation. Respondent attached the relevant police report, which showed that the reporting police officer sought a charge of domestic assault against *petitioner* and forwarded that information to the prosecutor's office. The report indicated that the police officer spoke with petitioner, and petitioner admitted to punching respondent in the face to regain control of her phone. Petitioner opposed respondent's motion to terminate. Petitioner alleged that respondent had a long history of abusive behavior, including a domestic violence conviction against an ex-girlfriend and the perpetration of threats and violence against petitioner. The trial court denied respondent's motion to terminate the PPO on September 30, 2020. Respondent did not appeal at that time.

## B. CONTINUATION OF PPO AND MOTION TO TERMINATE

Prior to the PPO's expiration in January 2021, petitioner filed a motion to extend the PPO. Petitioner stated that respondent had not threatened to physically assault her since the issuance of the PPO; however, she remained in fear of him. In the motion, petitioner wrote that at a hearing in their divorce case, respondent testified that he would have beaten petitioner during the July 12, 2020 altercation had their daughter not been present. On January 7, 2021, the trial court granted petitioner's motion to extend, and in an ex parte order, set forth the same restrictions on respondent as in the initial PPO.

On February 1, 2021, respondent filed a motion to terminate the PPO. Respondent argued that he had not violated the original PPO, that petitioner's allegations did not satisfy the statutory criteria for extending a PPO, and that the court could not continue a PPO on the basis of petitioner's speculative fears. Respondent also stated that the testimony he gave at the divorce hearing meant that he would have engaged in lawful self-defense *after* petitioner struck him in the head multiple times.

On May 14, 2021, the trial court held a hearing on respondent's motion to terminate the PPO. At the hearing, petitioner testified that respondent's behavior and demeanor had worsened throughout their divorce proceedings, and she felt that the protection from the PPO was more necessary as they approached the end of those proceedings. Referencing respondent's testimony from the divorce hearing, petitioner testified that respondent's language made her scared. Petitioner also testified that she was not aware of any instances in which respondent had violated the PPO. She stated she had been meeting with respondent for parenting-time exchanges weekly since August 2020 without incident.

The trial court focused on petitioner's testimony that respondent's statements at the divorce hearing made her fearful. The court found that petitioner was credible and that petitioner had a reasonable apprehension of violence on the basis of respondent's testimony. The court found that petitioner met her burden of proof to justify continuing the PPO and, accordingly, denied respondent's motion to terminate the PPO. This appeal followed.

## II. ANALYSIS

On appeal, respondent argues that the trial court abused its discretion by denying his motion to terminate the ex parte PPO. We agree. But we disagree with respondent's argument that the trial court applied the wrong legal standard when ruling on his motion.

We review a trial court's decision regarding the termination of a PPO for an abuse of discretion. *Pickering v Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). Further, we review a trial court's factual findings for clear error. *Id.* "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014).

MCL 600.2950 governs domestic-relationship PPOs. *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). Pursuant to MCL 600.2950(4), the trial court must issue a PPO if it "determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more" of a specified list of acts. Those acts, enumerated in MCL 600.2950(1), include the following:

> (a) Entering onto premises.
>
> (b) Assaulting, attacking, beating, molesting, or wounding a named individual.
>
> (c) Threatening to kill or physically injure a named individual.
>
> * * *
>
> (l) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence.

In determining whether reasonable cause exists, the court must consider:

> (a) Testimony, documents, or other evidence offered in support of the request for a [PPO].
>
> (b) Whether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1). [MCL 600.2950(4)].

"The petitioner bears the burden of establishing reasonable cause for issuance of a PPO, and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *Hayford*, 279 Mich App at 326 (citations omitted).

In this case, we conclude that the trial court abused its discretion by denying respondent's motion to terminate the PPO. The evidence presented by petitioner was insufficient for the trial

court to find there was reasonable cause to believe that respondent might commit a prohibited act under the PPO statute, MCL 600.2950(1). The trial court's decision appeared to exclusively rely on petitioner's testimony that respondent's statements about their July 12, 2020 altercation, given at a hearing in the parties' divorce case, made petitioner fearful. At this divorce proceeding, respondent testified:

> When I turned around . . . 'cause [my daughter] was in the room, and I had turned and looked at [my daughter] while I was lookin' at the phone. When I turned back around, she stole off on me. She punched me right in the face. So, actually, the first one was in the back of the head. And . . . then I kinda turned.

> And so, anyway, after that, I gave her the phone. . . . I'm gonna be honest with you. . . . I'm be [sic] completely transparent with you. I woulda knocked her slam out if my daughter wasn't there.

> My reaction would have been to punch her, but I looked at my daughter, and I was like, "There's absolutely no way that I'm gonna beat her mother down like this, the way she just hit me, because all my daughter will remember is that Daddy hurt Mommy because I can do a better job of it."

> So I walked out. I said, "I want a divorce. I can't believe you just did this, and I'm out." I said, "I will be back to pick up my daughter at 3:00 o'clock. I will bring her back to you at 6:00 o'clock 'cause I'ma spend time with her, but I'm out of this marriage."

Petitioner testified that respondent's comment about punching her made her feel "[s]cared" and "uncertain," and she stated, "I believe him when he says things like that." The trial court credited petitioner's testimony and found that petitioner suffered a reasonable apprehension of violence. The trial court was in the best position to assess petitioner's credibility, *Pickering*, 253 Mich App at 702 n 3, and we do not weigh the credibility of witnesses on appeal, *Brandt v Brandt*, 250 Mich App 68, 74; 645 NW2d 327 (2002). Therefore, we do not doubt the genuine nature of petitioner's fear. However, the trial court's credibility determination did not justify its ultimate conclusion that petitioner had met her burden of demonstrating reasonable cause to believe that respondent "may commit" an act prohibited under MCL 600.2950(1). This language, "may commit," in MCL 600.2950(4) is forward-looking, indicating that the trial court must find reasonable cause to believe that respondent may commit a prohibited act in the future. Petitioner's evidence established that respondent had previously caused her a reasonable apprehension of violence but did not demonstrate the possibility—beyond speculation—to believe respondent might do so again.

Further, it was proper for the trial court to consider respondent's testimony at the divorce hearing and whether that may have caused petitioner a reasonable apprehension of violence. See MCL 600.2950(4)(a). However, given that petitioner admittedly punched respondent in the face and that the responding police officer sought charges against *petitioner* for domestic assault, we conclude that it was an abuse of discretion for the trial court to deny respondent's motion to terminate on the basis of respondent's testimony about this incident. The trial court gave no consideration to the police officer's findings and how those findings may have contextualized

-4-

respondent's statement.[2]  Nor did the trial court adequately explain how evidence of respondent's testimony satisfied petitioner's burden to show reasonable cause that respondent might again cause petitioner reasonable apprehension of violence or commit some other prohibited act under MCL 600.2950(1).  The trial court's reasoning was particularly insufficient because respondent's testimony was the only piece of specific evidence cited by the trial court to justify its denial of respondent's motion to terminate.

There was also no evidence presented that respondent had violated the trial court's orders in the 10-month period between the issuance of the initial PPO and the hearing on respondent's motion to terminate.  While we acknowledge petitioner's fear that respondent's past conduct could persist, petitioner failed to present non-speculative evidence that established the possibility that respondent's behavior might reoccur.  Therefore, we hold that the trial court's decision was outside the range of principled outcomes.  Petitioner's evidence did not reasonably support a finding that there was reasonable cause to believe respondent might commit a prohibited act under MCL 600.2950(1).  Accordingly, the trial court abused its discretion by denying respondent's motion to terminate the PPO.[3]

Reversed and remanded for entry of an order granting respondent's motion to terminate the PPO.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

---

[2] Respondent contends that his testimony merely described a hypothetical act of lawful self-defense.  We need not decide the legal validity of that argument.

[3] Given our conclusion that reversal is warranted, we need not address respondent's additional argument that the trial court applied the wrong legal standard.  Nevertheless, we are not persuaded that the trial court erred.  The trial court correctly stated during its oral ruling that petitioner had the burden of proof to show reasonable cause that a PPO should issue because respondent's behavior causes petitioner a reasonable apprehension of violence.  Therefore, the trial court applied the proper legal standard, but its ultimate conclusion was an abuse of discretion.