*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NEH,

Petitioner-Appellee,

v

NAK,

Respondent-Appellant.

UNPUBLISHED
June 22, 2023

No. 361640
Ingham Circuit Court
Family Division
LC No. 22-000491-PP

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals as of right the circuit court's order denying his motion to terminate an ex parte domestic-relationship personal protection order (PPO) entered in favor of petitioner. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of petitioner's filing of an ex parte PPO petition against respondent, her ex-boyfriend and roommate, after respondent, while intoxicated, allegedly physically assaulted petitioner in one instance and sexually assaulted petitioner in two other instances. The incidents occurred in March, May, and August 2020. Petitioner sought a PPO in February 2022, alleging that respondent had begun drinking heavily again and had become emotionally and verbally abusive toward petitioner. It was petitioner's claim that when respondent was drinking, the likelihood of him engaging in similar conduct dramatically increased. The trial court issued an ex parte PPO, which respondent moved to set aside, arguing that petitioner's allegations were "false and fabricated." Following a hearing, the circuit court denied respondent's motion to terminate the PPO.

## II. ANALYSIS

Respondent argues that the circuit court abused its discretion by denying his motion to terminate the ex parte PPO against him. Respondent further argues that there was insufficient evidence to show that there was reasonable cause to believe that respondent may commit an act

-1-

under MCL 600.2950(1) because petitioner's testimony was speculative and based on past conduct from 2020.

A trial court's decision to grant or deny a PPO, including a respondent's motion to terminate a PPO, is reviewed by this Court for an abuse of discretion. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. at 463-464. We review a trial court's findings of fact for clear error. *Id*. at 464. This Court must give deference to the lower court and find clear error only if it is left with the definite and firm conviction that a mistake has been made. *Id*.

A PPO is an injunctive order issued by the circuit court. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008); MCL 600.2950(30)(d). Domestic-relationship PPOs are governed by MCL 600.2950. See *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). MCL 600.2950 applies to spouses, individuals who share a child together, individuals in a dating relationship, or individuals who reside together in the same household. Pursuant to MCL 600.2950(4), a circuit court must issue a PPO if it "determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in" MCL 600.2950(1).

MCL 600.2950(1) states, in relevant part:

[A]n individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin a spouse . . . or an individual residing or having resided in the same household as the petitioner from doing 1 or more of the following:

(a) Entering onto premises.

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

\* \* \*

(e) Purchasing or possessing a firearm.

\* \* \*

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

\* \* \*

(j) Engaging in conduct that is prohibited under [MCL 750.411h (stalking) or MCL 750.411i (aggravated stalking)].

Relating to MCL 600.2950(a)(j), MCL 750.411h(1) provides these relevant definitions:

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

(b) "Emotional distress" means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.

(c) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(d) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(e) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(*i*) Following or appearing within the sight of that individual.

(*ii*) Approaching or confronting that individual in a public place or on private property.

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

(f) "Victim" means an individual who is the target of a willful course of conduct involving repeated or continuing harassment.

When a circuit court reviews a petition for a PPO it is required to consider testimony, documents, and other proffered evidence, and it is also required to consider whether the respondent previously

engaged in the listed behaviors. MCL 600.2950(4). Additionally, to issue a PPO, the court must find "evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Hayford*, 279 Mich App at 330; see also MCL 750.411h(1)(a).

Here, petitioner sought an ex parte PPO under MCL 600.2950 on the grounds that respondent, while drunk, had physically assaulted and sexually assaulted her twice in 2020. It was petitioner's contention that respondent recently started drinking again when petitioner filed the petition for PPO in February 2022. Petitioner's testimony at the hearing on respondent's motion to terminate the PPO indicated that while petitioner and respondent were with respondent's friend at a lake house on March 7, 2020, respondent became intoxicated and punched petitioner in the face, which caused petitioner to suffer a black eye. Additionally, petitioner testified that when she slept at respondent's apartment on May 10, 2020, respondent, without her consent, tried to penetrate her and have sex with her, but he was unable to maintain an erection "because he was so inebriated." Furthermore, petitioner testified that in August 2020, respondent, without her consent, touched her over her underwear. Moreover, petitioner testified that in February 2022, respondent had begun drinking heavily again, and she no longer felt safe living with respondent because he had physically and sexually assaulted petitioner in the past while he was drinking. Respondent denied all allegations.

Hence, petitioner presented evidence of two previous acts of unconsented contact that caused petitioner to suffer emotional distress as required by MCL 750.411h(1)(a). See *Hayford*, 279 Mich App at 330. Petitioner's testimony about the circumstances of each act were, in part, supported by the testimony of respondent, who acknowledged that petitioner and respondent were together with respondent's friend at a lake house in March 2020 and that respondent drank a couple times a week around the time of the alleged incidents. And although respondent contests the credibility of petitioner, we defer to the trial court's determination that petitioner was credible because "the trial court is in the best position to determine the credibility of the parties, which will obviously include the testimony, demeanor, and motive of the petitioner." *Pickering v Pickering*, 253 Mich App 694, 702 n 3; 659 NW2d 649 (2002). Furthermore, respondent's concern about petitioner's failure to present additional witnesses is inconsequential because petitioner had to show only "that there is *reasonable cause* to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in" MCL 600.2950(1) (emphasis added). See MCL 600.2950(4).

Petitioner's testimony, which the trial court deemed credible, supported the trial court's finding that there was reasonable cause to believe respondent might commit a prohibited act under MCL 600.2950(1). Petitioner showed that respondent previously committed two or more acts of unconsented contact that caused petitioner to suffer emotional distress, and respondent had recently begun engaging in the same conduct that petitioner alleged resulted in the previous physical and sexual assaults. See MCL 600.2950(4). On this record, we conclude that the trial court did not abuse its discretion when it denied respondent's motion to terminate the PPO.

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra